L.R. TUCKER *v.* Melton HOLT, Tax Collector

00-517                                      33 S.W.3d 110

Supreme Court of Arkansas
Opinion delivered December 14, 2000

*Appellant*, pro se.

*Hale, Fogleman & Rogers*, by: *Joe M. Rogers*, for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant L.R. Tucker owns three lots within the city of West Memphis. Two of the lots are improved, and the third. lot is vacant and unimproved. On or about October 9, 1996, Mr. Tucker tendered payment to the Crittenden County Tax Collector for real property taxes assessed against the lots during the 1995 tax year. Thereafter, the tax collector, appellee Melton Holt, Jr., notified Mr. Tucker that his payment could not be processed until he paid an additional amount due as the result of a "grass cut lien" imposed against the unimproved lot. The City of West Memphis had mowed or cut the vegetation on Mr. Tucker's unimproved lot on July 23, 1995, and then on December 7, 1995, the City Council of West Memphis passed a resolution imposing a grass-cutting lien in the amount of

$75.66 on the property pursuant to Ark. Code Ann. §§ 14-54-901—904 (Repl. 1998). Mr. Tucker failed to satisfy the grass-cutting lien, and the tax collector refused to accept a partial payment of taxes for the tax year 1995. In October of 1997, Mr. Tucker again tendered payment to the tax collector for real property taxes assessed against the lots during the 1996 tax year. The tax collector again refused to accept this payment until Mr. Tucker paid the 1995 delinquent taxes, including the grass-cutting lien.

On November 10, 1997, Mr. Tucker filed a petition in the Crittenden County Chancery Court seeking a writ of mandamus to compel the tax collector to accept the payment he had tendered for his real property taxes. His petition also asked the chancery court to enjoin the tax collector from demanding future payment in excess of the amount due for real property taxes. Each party moved for summary judgment in the chancery court. Before ruling on the motions, however, the chancellor concluded that subject matter jurisdiction did not lie in chancery court. The case was then transferred to the Crittenden County Circuit Court. The circuit court eventually held a hearing on the motions for summary judgment and entered an order in which it cited this court's holding in *Howell v. Lamberson*, 149 Ark. 183, 231 S.W. 872 (1921) and directed the tax collector to accept payment from Mr. Tucker for the general taxes assessed on the property for the tax years 1995 through 1998 without penalty or interest and without requiring Mr. Tucker to pay the grass-cutting lien. The circuit court also upheld the constitutionality of Ark. Code Ann. §§ 14-54-901—904 and found (a) that the City of West Memphis properly followed sections 14-54-901—904 in enacting its ordinance and in referring the grass-cutting lien to the county tax collector for enforcement, and (b) that the tax collector properly followed the statutory scheme set forth in section 14-54-904 in including the grass-cutting lien on the tax statement sent to Mr. Tucker.[1] Finally, the circuit court ruled that "the tax collector is authorized to proceed in accordance with applicable state law in enforcing the collection of such tax in the event the plaintiff refuses to pay the tax in accordance with this ruling." This later ruling by the circuit court is the focus of Mr.

---

[1] According to Mr. Tucker, he never raised or presented the issue of the constitutionality of Ark. Code Ann. §§ 14-54-901—904 to the trial court. Moreover, he asserts on appeal that the "question of the constitutionality of the statute is irrelevant."

Tucker's appeal.[2]

For his first point on appeal, Mr. Tucker argues that the circuit court erred in finding that the tax collector is authorized to enforce collection of the grass-cutting lien for the municipality. Specifically, Mr. Tucker contends that sections 14-54-901—904 provide the tax collector with no authority to collect the grass-cutting lien for the City of West Memphis. We disagree.

■ Section 14-54-901 provides that incorporated towns and cities of the first and second class are empowered to order the owners of lots within their towns or cities to cut weeds on their property "after the town or city has provided therefore by an ordinance to that effect." Section 14-54-903 states:

(a) If the owner of any lot or other real property within an incorporated town or city shall neglect or refuse to remove, abate, or eliminate any condition as may be provided for under an ordinance passed by the city or town as provided for in § 14-54-901, after having been given seven (7) days' notice in writing to do so, then the town or city is authorized to do whatever is necessary to correct the condition and to charge the cost thereof to the owner of the lots or other real property.

(b) The town or city is given a lien against the property for the costs.

With regard to enforcing the aforementioned lien, section 14-54-904 provides, in relevant part:

(a) The lien provided for in 14-54-903 may be enforced and collected in either one of the following manners:

(1) At any time within eighteen (18) months after work has been done, by an action in the chancery court; or

(2) The amount of the lien provided in 14-54-903 may be determined at a hearing before the governing body of the municipality held after thirty (30) days' written notice by certified mail to the owner of the property if the name and whereabouts of the owner are known. If the name of the owner cannot be deter-

---

[2] The tax collector has not cross-appealed the trial court's ruling, pursuant to *Howell v. Lamberson*, that he must accept payment from Mr. Tucker for the general taxes assessed on the property for the tax years 1995 through 1998 without penalty or interest and without requiring Mr. Tucker to pay the grass-cutting lien imposed by the City of West Memphis.

mined, then the amount will be determined only after publication of notice of the hearing in a newspaper having a bona fide circulation in the county where the property is located for one (1) insertion per week for four (4) consecutive weeks. The determination of the governing body is subject to appeal by the property owner in the chancery court. *The amount so determined at the hearing, plus ten percent (10%) penalty for collection, shall be certified by the governing body of the municipality to the tax collector of the county where the municipality is located, and placed by him on the tax books as delinquent taxes, and collected accordingly.* The amount, less three percent (3%) thereof, when so collected shall be paid to the municipality by the county tax collector.

(Emphasis added.) Based on the plain language of these statutes, it is clear that the tax collector has authority to collect the grass-cutting lien for the City of West Memphis.

■ Mr. Tucker also argues that those statutory provisions only authorize the county tax collector to collect such a lien after (1) an appropriate ordinance has been adopted by the city, and (2) the governing body of the city has certified the amount of the lien to the tax collector for placement on the books and collection. *See* Ark. Code Ann. §§ 14-54-901—904. The record in this case indicates that both of those contingencies occurred. In 1990, the City Council of West Memphis passed ordinance No. 1385 that orders property owners to cut weeds and grass on their property. If a property owner fails to comply with the order, the ordinance also authorizes the city to do whatever is necessary to correct the condition and charge the cost thereof to the owner. On December 7, 1995, after due notice to property owners as required by Ark. Code Ann. § 14-54-904(a)(2), the city council passed resolution number 1463 that certified "the amounts of liens imposed on certain properties for grass cutting contracted by the City of West Memphis pursuant to Ordinance 1385." Included in that resolution was the lien on Mr. Tucker's unimproved lot in the amount of $75.66 for grass cutting services performed on July 23, 1995.[3] Thus, the appropriate ordinance was passed by the city council and the city's governing body properly certified the amount of the lien to the county tax collector for collection. Accordingly, the tax collector

---

[3] Mr. Tucker did not exercise his right to appeal the city council's determination of the amount of the grass-cutting lien as provided by Ark. Code Ann. § 14-54-904. Moreover, he does not dispute that amount in this case.

had authority to pursue collection of the lien from Mr. Tucker, and the trial court did not err in so holding.

■ In further argument, Mr. Tucker suggests that section 14-54-904 does not provide the tax collector with any authority to collect the lien from him because that provision is not specifically contained in the "Taxation Code" of Arkansas. In other words, he argues that the tax collector may only perform those duties enumerated in the Arkansas tax code, and may not perform duties assigned to the tax collector by statutes that appear elsewhere in the Arkansas Code. Mr. Tucker fails to cite any authority to support his argument. We will not consider assertions of error that are unsupported by convincing legal authority unless it is apparent without further research that the argument is well-taken. *Rainey v. Hartness*, 339 Ark. 293, 5 S.W.3d 410 (1999).

■ As a second point for reversal, Mr. Tucker asserts that the trial court erred "in failing to find that collection by the county tax collector of the amount of a levy based on a municipal ordinance, as a *tax*, fails to comply with the requirements of provisions of Article 16, section 5, of the State Constitution, which prescribe that property shall be taxed according to value." Article 16, section 5, of the Arkansas Constitution provides, in relevant part: "All real and tangible personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State." Mr. Tucker contends that the imposition of the lien on his property violates this constitutional provision because the amount of the lien has no relation to the value of the property. Mr. Tucker's argument is without merit. Article 16, section 5, of the Arkansas Constitution refers to property taxes. Mr. Tucker's property taxes are not in dispute here; rather, this case involves an alternative means by which the City of West Memphis and similar cities and towns may recover their costs for "cutting unsightly weed lots when the property owner neglects to do so." Emergency Clause of Act 339 of 1979. The lien against Mr. Tucker's property relates to a fee for services that is imposed in the government's exercise of its police power; whereas, a tax is imposed for general revenue purposes. *City of Marion v. Baioni*, 312 Ark. 423, 850 S.W.2d 1 (1993). Mr. Tucker admitted in his motion for summary judgment that the grass-cutting lien is "for a fee, not a tax."

■ Mr. Tucker also insists that an unidentified "statutory requirement that all taxes must be 'adopted at a special or general election by the qualified electors of the city or in the area of the county where the tax is to be imposed, as the case may be' should be met." Because he again fails to cite any authority to support his contention, we need not address the argument on appeal. *Rainey v. Hartness, supra.* In any event, Ark. Code Ann. § 14-54-903 authorizes the imposition of a lien in order for a municipality to recover a fee for the cost of providing services that the property owner refuses to perform. *City of Marion v. Baioni, supra.*

For his third point on appeal, Mr. Tucker argues that "the trial court erred in failing to find that there is no statutory authority which authorizes or permits the county tax collector to add amounts for taxes to the county tax book, nor to demand payment for amounts for taxes not stated in the county tax book." In support of his contention, Mr. Tucker cites several statutory provisions. First, Ark. Code Ann. § 26-28-108 (Repl. 1997) states that the clerk of the county court is to make out and deliver the tax books to the tax collector, thereby authorizing the tax collector to collect the taxes. Next, Ark. Code Ann. § 26-28-305 (Repl. 1997) provides that the tax collector's duties are (1) to make changes to the tax books after the assessor files the final abstract of the tax books "as authorized by the assessor by a two-part change form;" (2) to prepare the tax statements and tax receipts and collect the taxes; and (3) to prepare and certify the monthly and final distributions of all current and delinquent taxes collected by the tax collector. Finally, Ark. Code Ann. § 26-2-110 (Repl. 1997) states: "If any collector shall collect taxes not stated on the tax book or shall collect a greater amount than is therein stated, except as authorized by this act, he shall be guilty of a Class C felony." Mr. Tucker claims that the tax collector is prohibited from collecting the city's grass-cutting lien because the county tax collector may only collect those amounts that are stated on the tax books, and the tax collector may not add amounts to the tax books. These claims are also without merit.

■ Section 14-54-904(a)(2) specifically provides that the amount of the lien shall be certified by the governing body of the municipality to the county tax collector, "and placed by him on the tax books as delinquent taxes, and collected accordingly." By that statute, the General Assembly has given the tax collector the authority to place the lien amount on the tax books as delinquent

taxes and then to collect that amount accordingly.[4] Thus, when Mr. Tucker states that "there is no statutory authority which authorizes or permits the county tax collector to add amounts for taxes to the county tax book," he is clearly mistaken. Likewise, Mr. Tucker is mistaken when he states that the tax collector illegally demanded payment for taxes not stated on the tax books in violation of section 26-2-110. Section 14-54-904(a)(2) requires that the amount of the lien be placed on the tax books by the tax collector before it can be collected. Mr. Holt, the Crittenden County Tax Collector, swore by affidavit that he entered the grass-cutting lien on the 1995 tax book. We therefore conclude that the tax collector followed the statutory procedure for collection of the lien and did not illegally demand payment for taxes not stated on the tax books in violation of section 26-2-110.

In his final point on appeal Mr. Tucker contends that the grass-cutting lien amounts to an illegal exaction pursuant to the provisions of Article 16, section 13, of the Arkansas Constitution. He asserts that the lien constitutes an illegal exaction because "a tax ... was never levied, assessed or extended on the tax records" and was instead "manually stamped on the tax book" by the county tax collector. In other words, Mr. Tucker finds fault with the fact that the amount of the lien was "not stated on the county tax book, as prepared and delivered to [the tax collector] by the clerk of the county court" but was "unilaterally" added to the tax book by the tax collector. Such actions by the county tax collector, however, do not result in an illegal exaction. An illegal exaction is a tax that is either not authorized by law or is contrary to law. *Hartwick v. Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989). Here, the lien was specifically authorized by law in Ark. Code Ann. §§ 14-54-901— 904. A flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, will not make the exaction illegal. *Martin v. Couey Chrysler Plymouth, Inc.*, 308 Ark. 325, 824 S.W.2d 832 (1992). In this case, Mr. Tucker challenges one method for the enforcement and collection of the grass-cutting lien. Article 16, section 13, of the Arkansas Constitution was not intended to be a vehicle for such a grievance. *Id.* Accordingly, Mr. Tucker's illegal-exaction argument is without merit.

---

[4] Delinquent taxes on real property are collected according to the provisions of Ark. Code Ann. § 26-37-101 *et seq.* (Repl. 1997), which include the sale of tax-delinquent lands by the Commissioner of State Lands.

Affirmed.

GLAZE and SMITH, JJ., concur.