The Honorable Bill Sample State Representative 2340 North Highway 7 Hot Springs, AR 71909-9309
Dear Representative Sample:
I am writing in response to your request for an opinion on the following:
 Could you please opine on the constitutionality of Act 1984 of 2005? If the Act on its face does not run afoul of the Arkansas Constitution, is it permissible for a county to adopt an ordinance based on this Act?
RESPONSE
In my opinion, with respect to Question One, a court would likely conclude that Act 1984 of 2005 is constitutional on its face. I am unable to determine whether Act 1984 of 2005 would be unconstitutional as applied because of the intensely factual analysis required. While I am uncertain what sort of ordinance you are referring to in Question Two, I am not aware of an impediment to a quorum court adopting an ordinance based on a valid state law.
Initially, I will set forth the language of Act 1984 of 2005, codified at A.C.A. § 14-14-813, and as amended by Act 126 of 2007 andAct 250 of 2007:
 (a) To the extent that it is not inconsistent with the powers exercised by incorporated towns and cities of the first class and cities of the *Page 2 
second class under § 14-54-901 et seq., counties are empowered to order the owner of real property within the county to:
 (1) Abate, remove, or eliminate garbage, rubbish, junk as defined in Section 27-74-402, and other unsightly and unsanitary articles upon property situated in the county; and
 (2) Abate, eliminate, or remove stagnant pools of water or any other unsanitary thing, place, or condition that might become a breeding place for mosquitoes and germs harmful to the health of the community.
 (b) A copy of the order issued under subsection (a) of this section shall be:
 (1) Posted upon the property; and
 (2)(A) Mailed to the last known address of the property owner by the county clerk or other person designated by the quorum court; or
 (B) Published in accordance with § 14-14-104
if there is no last known address for the property owner.
 (c)(1) If the property owner has not complied with the order within thirty (30) days after notice is given in accordance with subsection (b) of this section, the county may:
 (A)(i) Take any necessary corrective actions, including repairs, to bring the property into compliance with the order; or
 (ii) Remove or raze any structure ordered by the county to be removed or razed; and
 (B) Charge the cost of any actions under subdivision (c)(1)(A) of this section to the owner of the real property *Page 3 
 (2) The county shall have a lien against the property for any unpaid cost incurred under subdivision (c)(1) of this section in addition to interest at the maximum legal rate.
 (d) In all successful suits brought to enforce liens granted under this section, the county shall be reimbursed its costs, including title search fees and a reasonable attorney's fee.
 (e) This section does not apply to:
 (1) Land valued as agricultural property that is being farmed or otherwise used for agricultural purposes; or
 (2) A parcel of land larger than ten (10) acres if the unsanitary condition of the parcel is not visible from a public road or highway.
This statute purports to grant authority to a county to undertake corrective actions within the county, but outside of any applicable municipal boundaries. Furthermore, if a property owner does not take corrective action, this statute allows the county to undertake corrective action on the property and place a lien for the costs of such corrective actions on the property.
Question One: Is Act 1984 of 2005 constitutional?
In my opinion, a court would likely conclude that Act 1984 of 2005
does not violate the Arkansas Constitution on its face as a valid exercise of the "police power."
Generally, when determining the constitutionality of a statute, the Arkansas Supreme Court has stated:
 Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20
(1999); ACW, Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770
(1997). If it is possible to construe a statute as constitutional, we must do so. Jones v. State, 333 Ark. 208, *Page 4 969 S.W.2d 618 (1998). In construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law. McLeod v. Santa Fe Trail Transp. Co., 205 Ark. 225, 168 S.W.2d 413
(1943). We must also give effect to the legislature's intent, making use of common sense and giving words their usual and ordinary meaning. Kyle v. State, 312 Ark. 274, 849 S.W.2d 935 (1993).
Bunch v. State, 344 Ark. 730, 736, 43 S.W.3d 132 (2001). Moreover, the legislature has the absolute power to legislate, unless prohibited from doing so by the constitution, either expressly or by necessary implication. Black v. Cockrill, 239 Ark. 367, 369, 389 S.W.2d 881
(1965). However, notwithstanding the foregoing, it is well established that constitutional provisions, including amendments, take precedence over any law passed by the legislature. Gravett v. Villines, 314 Ark. 320,326, 862 S.W.2d 260 (1993).
When a state passes laws to protect the health, safety, and welfare of the entire populace, it does so pursuant to its inherent "police power." 16A C.J.S. Constitutional Law 392 (1984). The "police power" of the state is an inherent function of sovereignty and is as "old as the civilized governments that exercise it." Geurin v. City of Little Rock, 203 Ark. 103,108, 155 S.W.2d 719 (1941) (quotation omitted); see also Springfield v.City of Little Rock, 226 Ark. 462, 290 S.W.2d 620 (1956) (upholding Little Rock's order to raze multiple dwellings as fire, health, and structural hazards pursuant to Ark. State. Ann. § 19-2803). The Arkansas Supreme Court has described a municipality's "police power," exercised pursuant to an express grant in A.C.A. § 14-55-102 (Repl. 1998), in pertinent part as follows:
 In Springfield v. City of Little Rock, 226 Ark. 462, 290 S.W.2d 620 (1956), we recognized the city's plenary duty to exercise its police power in the interest of the public health and safety of its inhabitants. Id. at 464-65, 290 S.W.2d at 622. The police power of the state is founded in public necessity and this necessity must exist in order to justify its exercise. Id. It is always justified when it can be said to be in the interest of the public health, public safety, public comfort, and when it is, private rights must yield to public security, *Page 5 
under reasonable laws. City of Little Rock v. Smith, 204 Ark. 692, 695, 163 S.W.2d 705, 707
(1942) (quoting Beaty v. Humphrey, 195 Ark. 1008, 115 S.W.2d 559 (1938)).
Phillips v. Town of Oak Grove, 33 Ark. 183, 189, 968 S.W.2d 600 (1998) (emphasis added). In my opinion, the analysis in Phillips, regarding the extent of the state's "police power" when specifically delegated, would be applicable to Act 1984 of 2005 because the act specifically delegates to counties the authority to act in this area. Private property rights are held subject to reasonable regulations in order to preserve the welfare of the public at large. See Yarborough v. Ark. State Hwy.Comm'n, 260 Ark. 161, 164, 539 S.W.2d 419 (1976) ("This Court recognizes Article 2, § 22 [of the Arkansas Constitution] protects individual property rights, but the individual's use and enjoyment of property is always subject to reasonable regulations in order to preserve the welfare of the public at large"). Specifically, the court has stated:
 All property rights are held subject to the state's police power and in the exercise of the police power the state has full power to establish and enforce all regulations reasonable and necessary to secure the health, safety, and general welfare of the community.
Hogue v. The Housing Authority of North Little Rock, 201 Ark. 263, 274,144 S.W.2d 49 (1940). Because the state has the authority to enforce all regulations necessary and reasonable under the police power, the Arkansas Courts have held that "when the health and welfare of the public is involved, individual rights must yield to the superior rights of the public, even if it means the reduction in value of the property."See Burt v. Ark. Livestock Poultry Comm'n, 278 Ark. 236, 240,644 S.W.2d 587 (1983) (citing Hadacheck v. Sebastian, 239 U.S. 394 (1915));see also Springfield, 226 Ark. at 465.
The police power of the state, however, has limits. A state may not unreasonably or arbitrarily impose restrictions or injury on property under the guise of the "police power." Bachman v. State, 235 Ark. 339,359 S.W.2d 815 (1962). A police power regulation must be justified by a public necessity. See Phillips, 333 Ark. at 189 (citing Springfield, 226 Ark.). The exercise of the police powers will be justified when it is used in the interest of the public health, safety, and comfort in a reasonable manner. Id. The mere assertion by the legislature that an act is intended to benefit the public health, safety, or welfare is not dispositive when the *Page 6 
act itself bears does not have a substantial connection with the real purpose of the act. Noble v. Davis, 204 Ark. 156, 159-60, 161 S.W.2d 189
(1942). While there is no requirement that the regulated activity first be determined to be a nuisance, the act must be reasonably necessary to effectuate the police power and it must not be an arbitrary enactment. The regulation must be reasonably necessary and a court will "declare the act void only when it clearly appears that it bears no real or substantial relation to the police power, or the means adopted for effecting the object are manifestly arbitrary and unreasonable."Harlow v. Ryland, 78 F.Supp. 488, 446 (E.D. Ark. 1948), affirmed 172 F.2d 784 (8th Cir. 1949).
To determine whether Act 1984 of 2005 is constitutional, I must first determine whether the act regulates matters that are within the traditional police power of the state. Secondly, if the act is within the traditional ambit of the police powers, I must determine whether the act is reasonably related to its intent and whether it is an arbitrary exercise of this power.
Because the statute is first presumed to be constitutional, and any doubt must be resolved in favor of constitutionality, in my opinion a court would conclude that Act 1984 of 2005 is constitutional on its face. While merely stating that an act is intended to exercise police powers is not determinative, in my opinion the plain and ordinary language of the Act unambiguously reveals the legislative intent to allow counties to ameliorate dangers to the public health and safety. The two areas that the state specifically delegated to the counties to enforce are both clearly within the ambit of the police powers — garbage, rubbish, and unsanitary articles as well as breeding grounds for diseases. Protecting the public from property that may harbor infectious diseases or that may pose a physical danger has long been upheld as an appropriate exercise of the "police powers." See, e.g., Phillips, 333 Ark.; Burt, 278 Ark.; andSpringfield, 226 Ark. This is a real and substantial relationship to the "police power."
In applying the analysis described above, in my opinion Act 1984 of 2005
is reasonably related to its stated goals and is not unreasonable, arbitrary, or capricious. As noted above, the Act appears reasonably related to the general goals of protecting the people of the state from unsanitary or unsafe conditions. The provisions set forth to enforce the "police power" appear reasonable as well. Initially, there is a one month period where the owner of the property may remedy the condition. The property owner has the opportunity to ameliorate the conditions before the county acts to correct the condition deemed injurious to the *Page 7 
public. Furthermore, subsection (e), quoted above, details exemptions for agricultural properties and large parcels of land. The attachment of a lien for services provided by the county when the owner has refused to provide them is proper. See Tucker v. Holt, 343 Ark. 216, 33 S.W.3d 110
(2000) (upholding a grass-cutting lien pursuant to the city's exercise of delegated police power in A.C.A. § 14-54-901 — 904). Act 1984 of 2005
does not, in my opinion, appear to be patently unreasonable and a court would likely conclude that the act is reasonable and is not an arbitrary or capricious exercise of the police power.
I am unable to opine on whether an "as applied" constitutional challenge to Act 1984 of 2005 would succeed. An as applied constitutional challenge would necessarily be an intensely factual determination based on specific circumstances properly made by a court. See, e.g., Gheghanv. Weiss, 338 Ark. 9, 991 S.W.2d 536 (1999) ("[A] litigant has standing to challenge the constitutionality of a statute if the law is unconstitutional as applied to that particular litigant"). A court might analyze such issues as whether proper notice was given to "reasonably ascertainable" parties in interest. See, e.g., Mennonite Board ofMissions v. Adams, 462 U.S. 791 (1983) (due process was not satisfied when state tax sale procedure provided actual notice to the record owner of the property but only constructive notice to the mortgagee identified in public records). While the United States Supreme Court has not specified the exact duty on a governmental agency, the Court has held that in certain circumstances the government agency must do more than merely send a certified mail notification to the owner of record. See Jones v.Flowers, 547 U.S. 220 (2006) (due process requires state to take additional steps to notice owner of property when certified mail notice of tax sale is returned unclaimed).
Question Two: If Act 1984 of 2005 on its face does not run afoul ofthe Arkansas Constitution, is it permissible for a county to adopt anordinance based on this Act?
I am unaware of any legal reason why a Quorum Court would be unable to implement an ordinance based on a constitutional enactment. The legality or constitutionality of such an ordinance would, of course, depend on its provisions. As noted in response to Question One, in my opinionAct 1984 of 2005 appears constitutional on its face.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve. *Page 8 
Sincerely,
 DUSTIN McDANIEL Attorney General *Page 1