# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3494

_____

Mayme Brown, Individually and in her Official Capacity as Circuit Clerk of Hot Spring County, Arkansas, and on behalf of all Circuit Clerks in the State of Arkansas

*Plaintiff - Appellant*

v.

Mortgage Electronic Registration Systems, Inc., A Delaware Corporation; MERSCORP, Inc.; Bank of America, N.A.; Countrywide Home Loans, Inc., Now known as Bank of America, N.A.; Citimortgage, Inc.; Deutsche Bank National Trust Company; PHH Mortgage Corporation; HSBC Mortgage Services, Inc.; Novastar Mortgage, Inc.; National City Bank; J.P. Morgan Chase Bank; Bank of England; Wells Fargo, N.A.; John Does 1-100; Citifinancial Mortgage Company; National City Mortgage and National City Corp.; PNC Financial Services Group, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: September 24, 2013
Filed: December 31, 2013

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Mayme Brown, the Hot Spring County, Arkansas Circuit Clerk, filed suit in Arkansas state court against the appellees, various originators and servicers of loans (Lenders). Brown alleged that the Lenders used the Mortgage Electronic Registration System (MERS) to avoid paying recording fees on mortgage assignments and, thus, deprived Arkansas counties of revenue. The Lenders removed the case to federal court pursuant to the Class Action Fairness Act of 2005 (CAFA), codified at 28 U.S.C. § 1332(d). The district court[1] denied two Motions to Remand and then dismissed Brown's Complaint with prejudice. Brown appeals, asserting that the district court erred in exercising jurisdiction under CAFA, exercising supplemental jurisdiction over the state-law claims, refusing to abstain from deciding the state-law claims, and dismissing the Complaint on the merits. We affirm.[2]

## I. Background

Generally, in Arkansas, a mortgage on real property is recorded in the county circuit clerk's office. Any subsequent assignments are also recorded in the same office. Mortgagees pay fees for the original recording and all subsequent recordings. The MERS system changed this normal practice. With MERS, initial mortgage loans are recorded with the circuit clerk, fees are paid, and MERS is listed as the mortgagee

---

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

[2]The Lenders allege that PHH Mortgage Corporation is not a party to this appeal, as it was dismissed by the district court in an order separate from the order appealed. Federal Rule of Appellate Procedure 3(c) provides that a notice of appeal must "designate the judgment, order, or part thereof being appealed." However, there is "a policy of liberal construction of notices of appeal in situations where intent is apparent and there is no prejudice to the adverse party." Simpson v. Norwesco, Inc., 583 F.2d 1007, 1009 n.2 (8th Cir. 1978). Here, besides listing PHH in the caption on the notice to appeal, Brown expresses no other intent to appeal the separate order dismissing PHH. Moreover, Brown does not contest the Lenders' argument in her reply brief. Therefore, we find that PHH is not a party to this appeal.

of record. When an interest in the mortgage is transferred among MERS members, the MERS system tracks the assignments for priority purposes. MERS at all times remains the mortgagee of record in the county property records. The subsequent assignments are not recorded, and no recording fees are paid. Brown filed suit in Arkansas state court and argued that this use of the MERS system violated the Arkansas Deceptive Trade Practices Act (ADTPA), unjustly enriched the Lenders, and was an illegal exaction under the Arkansas Constitution.

The Lenders removed the action under CAFA. In denying Brown's first Motion to Remand, the district court held that it had jurisdiction over the illegal-exaction claim because the requirements under CAFA were met: (1) the class contained at least 100 members because the Arkansas Supreme Court has defined an illegal-exaction suit as a class action brought on behalf of all Arkansas taxpayers, (2) the parties were minimally diverse, and (3) Brown's allegation that the Lenders executed millions of documents without paying recording fees of approximately $15.00 each well exceeded the $5 million jurisdictional amount.

The district court denied a second Motion to Remand, in which Brown moved the court either to abstain from hearing the illegal-exaction claim, exercise comity by refusing to hear the claim, or allow Brown to dismiss the claim without prejudice. The district court found that the Burford abstention doctrine did not apply because the illegal-exaction claim seeking to enforce an Arkansas tax on behalf of its citizens was not the type of complex regulatory scheme required for abstention.[3] Second, Levin comity was inapplicable because Levin comity normally applies when a party

_____

[3] In Burford v. Sun Oil Co., 319 U.S. 315 (1943), the Supreme Court held that it was proper for federal courts to abstain from hearing a case in some "extraordinary and narrow" circumstances when the state should interpret its own complex regulatory scheme. See Melahn v. Pennock Ins., Inc., 965 F.2d 1497, 1503 (8th Cir. 1992) (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976)).

seeks an injunction to prevent enforcement of a tax, but Brown sought to enforce recording fees.[4] Finally, the court refused to grant Brown leave to dismiss the claim because her motive was "forum-driven."

The district court then dismissed Brown's entire Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). First, the court held that Brown did not state an illegal-exaction cause of action because Brown brought the claim as a tax-receiver against a private entity. A proper illegal-exaction claim is instead brought by a taxpayer to protect against the government's enforcement of an illegal exaction or expenditure. Second, the court found that both the ADTPA and unjust enrichment claims failed because they rest on the nonexistent duty to record mortgage assignments in Arkansas.

Brown then filed a Motion to Alter or Amend, asking the court to alter its judgment because it was error to retain jurisdiction over and dismiss the state-law claims along with the federal claim because the state-law claims raised novel or complex issues of state law. The district court denied this motion, finding that the claims were sufficiently related to meet the standard for supplemental jurisdiction under 28 U.S.C. § 1367, and the issues raised were neither novel nor complex.

## II. Jurisdiction

Brown raises three jurisdictional arguments on appeal: (1) the district court did not have jurisdiction under CAFA because it misconstrued the type of illegal-exaction action Brown pled, (2) even if the court did have CAFA jurisdiction over the illegal-exaction claim, it erred in exercising supplemental jurisdiction over the unjust

_____

[4]In Levin v. Commerce Energy, Inc., 560 U.S. 413 (2010), the Supreme Court held that comity required a taxpayer's federal constitutional challenge to a state tax exemption to proceed in state court.

enrichment and ADTPA claims, and (3) the court erred in not abstaining from hearing the claims.

## A. Class Action Fairness Act

The district court properly exercised subject matter jurisdiction under CAFA over the illegal-exaction claim.[5] Brown argues that the district court's exercise of jurisdiction was erroneous because her proposed class included only the 75 Arkansas circuit clerks rather than all Arkansas taxpayers. She contends that the district court's error in construing the class stemmed from its conflation of the two types of illegal-exaction actions in Arkansas.

We review the district court's interpretation of CAFA de novo. Westerfeld v. Indep. Processing, LLC, 621 F.3d 819, 822 (8th Cir. 2010). CAFA "confers federal jurisdiction over class actions where, among other things, (1) there is minimal diversity; (2) the proposed class contains at least 100 members; and (3) the amount in controversy is at least $5 million in the aggregate." Plubell v. Merck & Co., 434 F.3d 1070, 1071 (8th Cir. 2006) (citing 28 U.S.C. § 1332(d)). CAFA's removal provisions apply only to "class action" cases, which are defined by the statute as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

Before we reach Brown's arguments regarding the size of the class under CAFA, we must determine whether her proposed class meets the statutory definition of "class action." Brown's Complaint asked the court to certify a class under the

---

[5]The illegal-exaction claim is defined as follows: "Any citizen of any county, city or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." Ark. Const. art. XVI, § 13.

Arkansas constitutional provision defining an illegal-exaction action rather than under Federal Rule of Civil Procedure 23 or the similar Arkansas Rule of Civil Procedure 23. See City of W. Helena v. Sullivan, 108 S.W.3d 615, 617 (Ark. 2003) ("[T]he existence of a class based upon the illegal-exaction clause of [the Arkansas] constitution does not depend upon, or require, certification under the provisions of Rule 23." (citing T&T Chem., Inc. v. Priest, 95 S.W.3d 750 (Ark. 2003))). Though an illegal-exaction claim does not require a "certification" in Arkansas, T&T Chemical, Inc., 95 S.W.3d at 752-53, the Arkansas Supreme Court has prescribed a judicially-created procedure to bring an illegal-exaction claim in Arkansas. This procedure, which was promulgated prior to Rule 23 of the Arkansas Rules of Civil Procedure, provides a mechanism for plaintiffs to pursue a class action to collectively resist illegal taxation. Worth v. City of Rogers, 89 S.W.3d 875, 880-81 (Ark. 2002) (citing Laman v. Moore, 100 S.W.2d 971 (Ark. 1937)). In bringing an illegal-exaction claim, the Arkansas Supreme Court instructs courts to use Arkansas Rule 23 as a procedural guide. Carson v. Weiss, 972 S.W.2d 933, 935 (1998); see also Worth, 89 S.W.3d at 881. Accordingly, this is a "rule of judicial procedure" that permits Arkansas plaintiffs to effectively litigate their claims by "authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Therefore, we hold that Brown's Arkansas illegal-exaction claim is a "class action" within the statutory definition.[6]

We next turn to whether the district court erred in determining that the class satisfied the CAFA requirement that the class contain at least 100 members. "It is axiomatic the court's jurisdiction is measured either at the time the action is

---

[6]In passing CAFA, Congress emphasized that the term "class action" should be "interpreted liberally." S. Rep. No. 109-14, at 35 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 34. "Its application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority. Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." Id.

commenced or, more pertinent to this case, at the time of removal." Schubert v. Auto Owners Ins. Co., 649 F.3d 817, 822 (8th Cir. 2011) (citing McLain v. Andersen Corp., 567 F.3d 956, 965 (8th Cir. 2009)). The CAFA statute indicates that the 100 member requirement applies to the "proposed plaintiff class[]." 28 U.S.C. § 1332(d)(5)(B); see also Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) ("Even if it were later found that the narrowed . . . class numbers fewer than 100, the § 1332(d)(5)(B) limitation applies only to 'proposed' plaintiff classes . . . .").

Brown, in her Complaint, pled the illegal-exaction claim as a class action composed of Arkansas citizen-taxpayers. Though the Complaint states that some of the claims are brought on behalf of "[t]he proposed Class consist[ing] of the Circuit Clerks of Counties who are political subdivisions of the State of Arkansas," this language does not include the illegal-exaction claim because Brown indicates that she "brings the illegal exaction lawsuit in her individual capacity." Add. 36. In fact, in asking the court to certify a class for the illegal-exaction claim, Brown states that she is representative of "the class composed of all Arkansas citizen-taxpayers." Add. 57. Although Brown now attempts to avoid federal jurisdiction by asserting that her class did not include all Arkansas taxpayers, the face of her Complaint at the time the action was removed proposed to bring the action on behalf of all taxpayers in the State of Arkansas. See Hargis v. Access Capital Funding, LLC, 674 F.3d 783, 789-90 (8th Cir. 2012) (holding that removal under CAFA was appropriate though on appeal the plaintiff tries to restrict the class to fall below the jurisdictional amount in controversy requirement). Thus, Brown's "proposed plaintiff class" was greater than 100 members. See Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A., 481 F. App'x 622, 625 (2d Cir. 2012) (finding the numerosity requirement had been met by establishing that in the pleadings).

Finally, Brown's argument concerning the conflation of two types of illegal exactions in Arkansas is without merit. Under Arkansas law, an illegal-exaction

action as a matter of law is a class action brought on behalf of all taxpayers. Parker v. Perry, 131 S.W.3d 338, 346 (Ark. 2003) ("We have repeatedly held that an illegal-exaction suit is a collective single action prosecuted on behalf of all affected taxpayers."); Worth, 89 S.W.3d at 878. There are two types of illegal-exaction cases under Arkansas law—illegal-tax cases and public-funds cases. Brewer v. Carter, 231 S.W.3d 707, 709 (Ark. 2006). A public-funds case is one in which the taxes are being misapplied or illegally spent, and an illegal-tax case involves a tax that is itself illegal. Id. Brown argues that she pled a public-funds case, which is not brought on behalf of all taxpayers. Arkansas cases involving the misuse of public funds, however, proceed on a class theory that includes all Arkansas taxpayers. See, e.g., McGhee v. Ark. State Bd. of Collection Agencies, 201 S.W.3d 375, 376-77 (Ark. 2005) ("This is an action pursuant to Article 16, Section 13, of the Arkansas Constitution to protect the taxpayers of the State of Arkansas from alleged misuse of public funds . . . . [and] [o]ur common law makes an illegal-exaction suit under Article 16, Section 13, of the Arkansas Constitution a class action as a matter of law."). Thus, the type of illegal-exaction suit pled under Arkansas law does not alter the class membership.

Therefore, the district court properly found that Brown alleged a class action under CAFA and that the class for the illegal-exaction claim included all Arkansas taxpayers, and thus, it properly exercised jurisdiction under CAFA.[7]

---

[7]Brown does not challenge on appeal the decision of the district court to dismiss with prejudice Brown's CAFA action that was premised on an illegal-exaction claim. The district court concluded that Brown is "not a taxpayer suing because the government made an illegal exaction—she is a tax receiver suing because a private entity made an allegedly illegal withholding." Thus, it is unnecessary for us to review the merits of the issue. Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007). However, even if her argument could be broadly read to include the merits of the illegal-exaction claim, we agree with the district court's sound reasoning that the facts pled do not state a cognizable claim under Arkansas law.

## B. Supplemental Jurisdiction

The district court did not err in refusing to dismiss or remand the state-law claims after dismissing the illegal-exaction class action claim. The exercise of supplemental jurisdiction is reviewed for abuse of discretion. Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 640 (2009). The district court is required to exercise supplemental jurisdiction over claims "that are so related to [the] claims in the action within such original jurisdiction that they form part of the same case or controversy" unless one of the enumerated circumstances giving the district court discretion to decline jurisdiction is present. 28 U.S.C. § 1367(a); see also ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 963-64 (8th Cir. 2011); McLaurin v. Prater, 30 F.3d 982, 984-85 (8th Cir. 1994). One such circumstance provides a court discretion to decline jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A district court's discretion in these circumstances is very broad. Clark v. Iowa State Univ., 643 F.3d 643, 645 (8th Cir. 2011) (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)) (holding that the district court had authority to exercise jurisdiction over a state-law claim derived from common nucleus of operative fact after dismissing plaintiff's federal claims). In exercising its discretion, the district court should consider factors such as judicial economy, convenience, fairness, and comity. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988); Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1249 (8th Cir. 2006) (per curiam).

Here, the district court dismissed the federal claims and the state-law claims in the same Order. It would have been a waste of judicial resources to remand the case, since the federal court had already expended a great deal of time and resources with the issues. See Grain Land Coop v. Kar Kim Farms, Inc., 199 F.3d 983, 993 (8th Cir. 1999). Moreover, it was both fair to the parties and a proper application of comity for the district court to decide the issue. The causes of action are not novel, and there is little basis for dispute as to the resolution of Brown's state-law claims as they

involved well-understood and settled principles of Arkansas law. See infra Part III; see also Birchem v. Knights of Columbus, 116 F.3d 310, 315 (8th Cir. 1997) (finding the district court did not abuse its discretion in ruling on "issues of state law on which there was little basis for dispute"). Thus, the district court did not err in exercising supplemental jurisdiction over Brown's state-law ADTPA and unjust enrichment claims.

## C. Abstention

Finally, the district court did not abuse its discretion in declining to abstain under Burford. Brown argues that the court should exercise Burford abstention because the action should have been filed in the county court in Arkansas, but it was instead filed in the circuit court. We understand this argument to be a subject-matter jurisdiction argument to which Burford abstention is not relevant. The Arkansas circuit court had subject-matter jurisdiction over Brown's initial Complaint which was appropriately filed in that court. Robinson v. Villines, 362 S.W.3d 870, 873-74 (Ark. 2009) ("A suit to prevent the collection of an illegal or unauthorized tax is an illegal exaction suit, and subject-matter jurisdiction is concurrently in circuit court."); see also Hoyle v. Faucher, 975 S.W.2d 843, 845 (Ark. 1998).

Nonetheless, Burford is not appropriate under the circumstances of this case. The exercise of Burford abstention is a matter entrusted to the sound discretion of the district court. Middle S. Energy, Inc. v. Ark. Pub. Serv. Comm'n, 772 F.2d 404, 418 (8th Cir. 1985); see also Gov't Emps. Ins. Co. v. Simon, 917 F.2d 1144, 1148 (8th Cir. 1990). "Burford abstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws." Bilden v. United Equitable Ins. Co., 921 F.2d 822, 825 (8th Cir. 1990). That is not the case here. This is a standard enforcement proceeding

requiring the federal court to apply Arkansas state law in a way that has already been interpreted by Arkansas courts.[8]

## III.  Merits

We agree with the district court's thorough analysis of Arkansas law, and we hold that the dismissal of the state law claims was appropriate under Federal Rule of Civil Procedure 12(b)(6).  This court reviews de novo the grant of a motion to dismiss for failure to state a claim.  Botten v. Shorma, 440 F.3d 979, 980 (8th Cir. 2006).  Because Arkansas law does not impose a duty on assignees of real estate mortgages to record those assignments, Brown's state law unjust enrichment and ADAPTA claims do not state a claim.

Arkansas is a recording state, but mortgagees do not have a duty to record.  See Ark. Code Ann. § 14-15-404; Bryan v. Easton Tire Co., 561 S.W.2d 79, 80 (Ark. 1978) ("Our statutes do not require assignments to be recorded.").  The purpose of recording is to give notice to subsequent purchasers.  Rhea v. Planters' Mut. Ins. Co., 90 S.W. 850, 850 (Ark. 1905) ("An unrecorded mortgage is good between the parties, and constitutes a valid lien . . . .").

---

[8]We note that Brown attempted to raise additional jurisdictional arguments by incorporating by reference those points from her motion to dismiss filed in the district court.  Specifically, Brown argues that the district court abused its discretion in refusing to grant her leave to dismiss and by refusing to exercise Levin comity.  We do not address Brown's arguments, however, because she failed to meaningfully argue them in her opening brief, Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007), and her attempts to incorporate arguments by reference do not remedy her failure to raise the issues on appeal, see Jones v. Pelo, 56 F.3d 878, 884 n.3 (8th Cir. 1995) (noting that 8th Cir. R. 28A(j) prohibits a party from incorporating by reference the contents of a brief filed elsewhere).

Under Arkansas law, an unjust enrichment claim requires that the party receive something of value to which he is not entitled and must restore. Day v. Case Credit Corp., 427 F.3d 1148, 1154 (8th Cir. 2005) (citing Smith v. Whitener, 856 S.W.2d 328, 329 (Ark. 1993)). Brown argues that because the Lenders have not paid recording fees, they were unjustly enriched by retaining both the fees due and owing to the counties and the benefit of first priority through notice to subsequent purchasers. Without a duty to record, however, the Lenders have retained nothing of value to which they are not entitled, and there is nothing they could be required to restore to the county. The district court properly dismissed the unjust enrichment claim.

The ADTPA claim fails for the same reason. The Arkansas Deceptive Trade Practices Act prohibits deceptive and unconscionable trade practices, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). The Arkansas Supreme Court defined an unconscionable act as "an act that affront[s] the sense of justice, decency, or reasonableness" including acts that violate public policy or a statute. Baptist Health v. Murphy, 226 S.W.3d 800, 811 n.6 (Ark. 2006) (alteration in original). The ADTPA claim rests on the duty to record. Because no such duty exists, we cannot see how failing to record is "false" or "unconscionable."

## IV. Conclusion

For the foregoing reasons, we find that the district court properly exercised jurisdiction over all claims in the lawsuit, and properly dismissed those claims for failure to state a claim on which relief can be granted. The decision of the district court is affirmed.

_____

-12-