SLIP OPINION

# SUPREME COURT OF ARKANSAS

**No.** CV-17-123

| | |
|---|---|
| MISSISSIPPI COUNTY, ARKANSAS; QUORUM COURT OF MISSISSIPPI COUNTY, ARKANSAS; RANDY CARNEY, IN HIS OFFICIAL CAPACITY AS COUNTY JUDGE; MISSISSIPPI COUNTY BOARD OF ELECTION COMMISSIONERS; AND MISSISSIPPI COUNTY CLERK<br><br>APPELLANTS<br><br>V.<br><br>CITY OF OSCEOLA, ARKANSAS; JAMES ROBERT BAKER, JR.; AND DOROTHY J. POLLOCK<br><br>APPELLEES | **Opinion Delivered:** March 2, 2017<br><br>APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT [NOS. 47-OCV-2017-5, 47-BCV-2017-3]<br><br>HONORABLE DAVID N. LASER, JUDGE<br><br><br><br>AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

This is an appeal from the Mississippi County Circuit Court's judgment granting a permanent injunction of a March 14, 2017 special election. Appellants argue that the circuit court erred by enjoining the special election on the grounds that Act 81 of 1901, which establishes two separate judicial districts in Mississippi County, prohibits an ordinance that amends an existing sales-and-use tax and an ordinance that authorizes the issuance of bonds to finance a new Mississippi County Courthouse to be located in Blytheville, Arkansas.[1] Specifically, they argue that Ordinance No. O-2016-16,[2] which amends an existing sales-

---

[1] The Chickasawba Judicial District's courthouse is located in Blytheville.

[2] Mississippi County, Ark. Ordinance No. O-2016-16 (Dec. 13, 2016).

and-use-tax ordinance to change the indicated use of revenues, is expressly authorized by Arkansas law and does not violate Act 81 of 1901[3] because (i) Act 81 is ambiguous and should be read in harmony with Arkansas Code Annotated sections 26-74-201 et seq. (Repl. 2008 & Supp. 2015); (ii) Act 81 has been superseded by section 26-74-201; and (iii) the plain language of the "Amended Sales and Use Tax" does not violate Act 81. Appellants also argue that Resolution No. R-2016-16, which referred Ordinance No. O-2016-16 to the electors for their acceptance or rejection, is not prohibited by Act 81. Regarding Ordinance No. O-2016-17,[4] which called a special election on the question of issuing bonds for the construction of a new courthouse in Blytheville, appellants argue that the issuance of bonds is permissible and that Act 81 "has nothing to do with" the county's ability to issue bonds. Because this appeal pertains to enjoining an election, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(4) (2016) (appeals pertaining to elections and election procedures) and Arkansas Rule of Appellate Procedure–Civil 2(a)(6) (2016) (an interlocutory order by which an injunction is granted). We affirm.

On December 13, 2016, the Mississippi County Quorum Court enacted the two ordinances and one resolution at issue in the present case.[5] Ordinance No. O-2016-16 amended an existing ordinance, No. O-2014-11,[6] which levied a 0.5% sales-and-use tax within Mississippi County (the Tax) to be used for the Mississippi County Hospital System

---

[3] Act of Apr. 4, 1901, No. 81, 1901 Ark. Acts 136.
[4] Mississippi County, Ark. Ordinance No. O-2016-17 (Dec. 13, 2016).
[5] The circuit court had previously enjoined an August 9, 2016 special election regarding similar ordinances for the construction of a new courthouse in Blytheville. That injunction is the subject of an appeal in case no. CV-16-696, also handed down this date. *See Mississippi Cnty. v. City of Osceola*, 2017 Ark. ____.
[6] Mississippi County, Ark. Ordinance No. O-2014-11 (July 22, 2104).

(County Hospital Purposes), to redesignate the use of the net collections of the Tax as follows:

> (i) fifty percent (50%) for County Hospital Purposes and (ii) fifty percent (50%) for one or more of the following: (A) *to acquire construct, repair, improve, renovate, equip, furnish, operate and maintain new or existing County courthouses and court facilities*; (B) for County Hospital Purposes; (C) to construct, reconstruct, restore, improve, maintain, alter and repair County roads, bridges, culverts and related structures[;] and (D) to pay and secure the repayment of bonds approved by the voters and issued by the County from time to time to finance capital improvements[.]

Ordinance No. O-2016-16 also proposed to extend the levy of the Tax from its initial end date of March 31, 2020, until March 31, 2047. In Resolution No. R-2016-16, the quorum court referred Ordinance No. O-2016-16 to the voters for approval or rejection in a special election to be held on March 14, 2017.

> In a related ordinance, No. O-2016-17, the quorum court found as follows:
>
> WHEREAS, the Quorum Court of Mississippi County, Arkansas (the "County") has determined that there is a need to acquire, construct, equip, and furnish a new County courthouse to be located in Blytheville, Arkansas, which will include particularly, without limitation, court facilities and administrative offices of the County, and any necessary land acquisition and utility, road, parking and drainage improvements related thereto or in support thereof (the "New County Courthouse"); and
>
> WHEREAS, the County can finance all or a portion of the costs of the New County Courthouse by the issuance of capital improvement bonds (the "Bonds") in one or more series in the maximum aggregate principal amount of $22,500,000 under the authority of Amendment No. 62 to the Constitution of the State of Arkansas ("Amendment 62") and Title 14, Chapter 164, Subchapter 3 of the Arkansas Code of 1987 Annotated (the "Authorizing Legislation"); and
>
> WHEREAS, the County can pay the principal of and interest on the Bonds from a pledge as collateral of fifty percent (50%) of the net collections received from the County's 0.5% sales and use tax levied by Ordinance No. O-2014-11, as amended, which will expire on March 31, 2047 (the "Tax"); and

> WHEREAS, the purpose of this Ordinance is to submit to the electors of the County at a special election the question of issuing the Bonds under Amendment 62 and the Authorizing Legislation for the purposes set forth herein[.]

Accordingly, Ordinance No. O-2016-17 calls a special election to be held on March 14, 2017, on the question of issuing the Bonds to finance all or a portion of the costs of the New County Courthouse in Blytheville, to be secured by a pledge as collateral of fifty percent of the net collections of the Tax.

On January 11, 2017, appellees City of Osceola, Arkansas; James Robert Baker, Jr.; and Dorothy J. Pollock[7] (hereinafter "Osceola") filed a petition seeking a temporary and permanent injunction of the March 14, 2017 special election to amend Ordinance No. O-2014-11 and approve courthouse bonds. Named as defendants were the appellants herein: Mississippi County, Arkansas; Quorum Court of Mississippi County, Arkansas; Randy Carney, in His Official Capacity as County Judge; Mississippi County Board of Election Commissioners; and Mississippi County Clerk. In its petition, Osceola contended that (A) Ordinance No. O-2016-16 and Ordinance No. O-2016-17 constitute an illegal exaction on Mississippi County taxpayers; (B) Defendants violated the Arkansas Code and Arkansas Freedom of Information Act; (C) Blytheville is not a county seat of Mississippi County and thus the construction of a courthouse in Blytheville to be funded by taxation on plaintiffs Baker and Pollock and the taxpayers of Osceola, the Osceola Judicial District, and Mississippi County is unlawful; and (D) in the alternative, if the court finds that Act 81 does not invalidate the ordinances or prevent an election on such ordinances, the proposed

---

[7] Mr. Baker and Ms. Pollock are residents of Osceola, and they are qualified voters and taxpayers in Mississippi County.

courthouse bonds are not sufficiently secured by funds to be collected pursuant to the ordinances. Appellants filed a counterclaim for declaratory judgment regarding the lawfulness of the ordinances and resolution at issue in this case, as well as existing sales and use taxes resulting from prior ordinances, but it was nonsuited at the conclusion of the hearing and dismissed without prejudice by the circuit court. [8]

After a hearing on February 10, 2017, the circuit court entered a judgment on that date granting Osceola's petition for a permanent injunction of the March 14, 2017 special election. The court held that Act 81 of 1901 invalidates the ordinances and resolution at issue. Appellants filed a timely notice of appeal on February 13, 2017. This court granted appellants' motion for expedited appeal and for accelerated briefing schedule.

An illegal exaction is a tax that is either not authorized by law or is contrary to law. *Williams v. City of Fayetteville*, 348 Ark. 768, 775–76, 76 S.W.3d 235, 239 (2002) (citing *Tucker v. Holt*, 343 Ark. 216, 33 S.W.3d 110 (2000); *Hartwick v. Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989); Ark. Const. art. 16, § 11). Here, the circuit court held that the amended sales-and-use-tax ordinance, the resolution, and the bond ordinance were invalidated by Act 81 and enjoined the special election for approval of those ordinances by the electors of Mississippi County. Thus, the circuit court found that the tax at issue was contrary to law, specifically the law set forth in Act 81 of 1901. We review issues of statutory construction de novo. *Harris v. City of Fort Smith*, 366 Ark. 277, 280, 234 S.W.3d 875, 878 (2006). This court has also stated that it reviews injunctive matters de novo. *City of Dover v. City of*

---

[8] Because this is an expedited appeal in an election case and concerns the grant of an injunction, we reach the merits despite any potential issues regarding lack of a final order.

SLIP OPINION

*Russellville*, 363 Ark. 458, 460, 215 S.W.3d 623, 625 (2005). The decision to grant or deny an injunction is within the discretion of the trial court, and the standard of review is abuse of discretion. *Id.*

On appeal, appellants point to the relevant statutory and constitutional authority that permits counties to levy sales and use taxes, change the indicated use of revenues and expiration date of an existing sales and use tax, refer ordinances to the electors for their acceptance or rejection, and authorize the issuance of bonds for capital improvements of a public nature. We begin with an examination of Act 81 of 1901, which provided the basis for the circuit court's ruling. Act 81 is titled "An Act to establish two judicial districts in the County of Mississippi, in the State of Arkansas." The Act delineates the boundary dividing the Chickasawba District and the Osceola District, and it provides that "the circuit courts and the chancery courts hereby established in the respective districts of Mississippi County shall be as distinct from each other, and have the same relation to each other, as if they were circuit and chancery courts of different counties." §§ 2, 7 1901 Ark. Acts at 138, 140. Other sections of Act 81 regulate the operations of the two judicial districts. For example, judgments and decrees rendered in the circuit courts of the respective districts shall be liens upon real estate only in the district where rendered, *id.* § 8, and the citizens of Mississippi County shall only be liable to serve on juries in the district in which they reside, *id.* § 9. Most pertinent to this appeal, section 20 of Act 81 provides as follows:

> That all revenue accruing to the county from the sale of forfeited state and county lands, liquor and ferry license, and *from all other sources whatever*, shall be used for the exclusive benefit of the district in which such revenue shall arise.

Section 20, 1901 Ark. Acts at 144 (emphasis supplied).

SLIP OPINION

The first rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Crafton, Tull, Sparks & Assocs., Inc. v. Ruskin Heights, LLC*, 2015 Ark. 1, at 5, 453 S.W.3d 667, 671. If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation. *Id.* A statute is ambiguous where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 52, 38 S.W.3d 356, 360 (2001); *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 21, 89 S.W.3d 884, 889 (2002).

In the present case, the plain language of section 20 is clear and unambiguous: all revenue accruing to the county from the enumerated sources and "from all other sources whatever" is to be used for the exclusive benefit of the judicial district from which it arises. The legislature could have omitted the "other sources" language altogether or limited it to other sources then in existence, but instead it expressly included revenue "from all other sources whatever." We thus reject appellants' argument that Act 81 is ambiguous.

Alternatively, appellants argue that Act 81 has been expressly superseded by Arkansas Code Annotated sections 26-74-201 et seq., which authorize a countywide sales-and-use tax to secure the payment of bonds, for any purpose for which the general fund of a county may be used, or for any combination thereof. Ark. Code Ann. § 26-74-201(c)(2). They note that the first sales-and-use tax in Arkansas was enacted in 1935, many years after the passage of Act 81 of 1901. *See* Act of Mar. 28, 1935, No. 235, 1935 Ark. Acts 609.

However, there is no reference to Act 81 in Arkansas Code Annotated sections 26-74-201 et seq., "Sales and Use Tax for Capital Improvements." The stated legislative intent of that subchapter is to "supplement all constitutional provisions and other acts adopted" for making capital improvements and issuing bonds for their financing. Furthermore, there is no conflict between the power of a county to levy a countywide sales-and-use tax and the requirement that revenue arising in one judicial district be used for the benefit of that district. As a general matter, the county is permitted to levy a countywide sales-and-use tax and it may use that revenue for capital improvements of a public nature. However, it has long been the law in Arkansas that a general statute must yield when there is a specific statute involving the particular subject matter. *Shelton v. Fiser*, 340 Ark. 89, 94, 8 S.W.3d 557, 560 (2000). That principle governs here, and we hold that Act 81 has not been superseded by the more general statutory provisions contained in Arkansas Code Annotated sections 26-74-201 et seq.

Appellants also argue that neither the plain language of the Amended Sales and Use Tax nor the resolution calling the election on the Tax violate Act 81. The Amended Sales and Use Tax provides for its use, in part, "to acquire, construct, repair, improve, renovate, equip, furnish, operate and maintain new or existing courthouses and court facilities," and does not specifically reference a courthouse in Blytheville, in the Chickasawba District. Thus, based on the language of the ordinance, appellants argue that the "Amended Sales and Use Tax" cannot violate Act 81 until tax proceeds from one judicial district are actually spent in another judicial district. We disagree. Appellants' arguments fail to acknowledge that the ordinances and resolution at issue were passed simultaneously for a common

purpose, and should be read together as complementary legislation. Ordinance O-2016-17 provides for the issuance of bonds for the specific purpose of financing a new county courthouse to be located in Blytheville, which will be secured by a pledge of fifty-percent of the net collections received by the county from Ordinance No. O-2014-11, as amended. Taken together, these ordinances would have authorized the use of tax revenue from the Osceola District for the exclusive benefit of the Chickasawba District in violation of Act 81. This would constitute an illegal exaction; therefore, the circuit court did not abuse its discretion in enjoining the special election. Similarly, appellants correctly point out that there is statutory authority for referring an ordinance to the electors through a resolution, *see* Ark. Code Ann. § 7-11-201(Repl. 2012) and § 14-14-905(f) (Repl. 2013); nonetheless, we conclude that the circuit court did not abuse its discretion in this case by enjoining a special election called on an illegal tax.

Finally, appellants argue that the quorum court had the authority under Amendment 62 to the Arkansas Constitution, Arkansas Code Annotated section 7-11-201, and Arkansas Code Annotated sections 14-164-301 et seq. (Repl. 1998 & Supp. 2015), to enact Ordinance No. O-2016-17, which called a special election on the question of issuing bonds for financing the cost of a new county courthouse in Blytheville. According to appellants, "Act 81 of 1901 has *nothing* to do with Mississippi County's ability to issue bonds—security instruments—to fund capital improvements of a public nature. Rather, Act 81 of 1901 relates to the use of revenues in a judicial district. Further, any potential prohibitions imposed by Act 81 of 1901 have been expressly superseded by Ark. Code Ann. § 14-164-

301, *et seq.*, which was enacted in 1985."[9]  While it is true that Act 81 does not address the issuance of bonds, the circuit court did not abuse its discretion in enjoining a special election for issuing bonds when the collateral funds would be derived from a tax that constituted an illegal exaction.

Based on the above, we affirm the judgment of the circuit court.[10]

Affirmed.

The mandate in this case shall issue immediately.

HART, J., dissents.

---

[9] Appellants cite the following:

> The people of the State of Arkansas by the adoption of Arkansas Constitution, Amendment 62 have expressed their intention to provide county and municipal governments expanded powers and authority with respect to the creation of bonded indebtedness for capital improvements of a public nature and the financing of facilities for the securing and developing of industry, and have empowered the General Assembly to define and prescribe certain matters with respect to the exercise of this power and authority. To that end this subchapter is adopted to enable the accomplishment and realization of the public purposes intended by Arkansas Constitution, Amendment 62 and is not intended to otherwise limit in any manner the exercise of the powers of counties and municipalities.

Ark. Code Ann. § 14-164-302 (Repl. 1998).  "Capital improvements of a public nature" include the construction of courthouses, court facilities, and administrative offices.  Ark. Code Ann. § 14-164-303(2)(C)(i), (ii) (Supp. 2015).

[10] The dissent states that "as a taxing entity, Mississippi County can levy a tax for the building of a courthouse in either judicial district because it is a county purpose."  However, none of the cases cited for this proposition are on point.  *Hutchinson v. Ozark Land Co.*, 57 Ark. 554, 22 S.W. 173 (1893), and *Woodard v. Thomas*, 238 Ark. 162, 381 S.W.2d 453 (1964), address certain property taxes levied in Clay County, which has two judicial districts, and the application of the rule of uniformity prescribed by article 16, section 5 of the Arkansas Constitution.  *Williams v. Arkansas Co. Courthouse Improvement Dist.*, 153 Ark. 469, 240 S.W. 725 (1922), concerns the constitutionality of creating a local improvement district for the purpose of building a courthouse.

**JOSEPHINE LINKER HART, Justice, dissenting.** I respectfully dissent from the majority's conclusion that Act 81 of 1901, which establishes two separate judicial districts in Mississippi County, precludes Mississippi County from financing a new Mississippi County courthouse to be located in Blytheville, Arkansas. Section 20 of Act 81 provides,

> That all revenue accruing to the county from the sale of forfeited state and county lands, liquor and ferry license, and from all other sources whatever, shall be used for the exclusive benefit of the district in which such revenue shall arise.

Section 20, 1901 Ark. Acts at 144. The majority concludes that the "plain language" of section 20 requires that the sales-and-use tax collected by Mississippi County be used only in the judicial district in which it was collected.

As this court noted in *Hutchinson v. Ozark Land Co.*, 57 Ark. 554, 22 S.W. 173, 174 (1893), in 1881 the General Assembly approved the creation of two judicial districts in Clay County. That act also contained the same language that is found in section 20 of Act 81. In *Hutchinson*, this court stated, "The expense of maintaining two judicial districts in a county is necessarily a county expense, and the revenue to pay it can be raised only by a county tax." *Hutchinson*, 57 Ark. at 558, 22 S.W. at 174; *see Williams v. Ark. Cty. Courthouse Improvement Dist.*, 153 Ark. 469, 473, 240 S.W. 725, 726 (1922) ("This court has held that a county may be divided into judicial districts, but that the expense of maintaining two judicial districts in a county is necessarily a county expense, and that the revenue to pay it can be raised only by a county tax."). We further stated, "All the affairs of the two districts are concerns of the county, and the expenses incurred in both, whether in the holding of courts or otherwise, constitute demands against the county; and a creditor of the county is not bound to look for payment alone to the district in which his claim arises." *Hutchinson*,

57 Ark. at 559, 22 S.W. at 174–75. After noting that the county is a taxing authority, we observed, "[I]t is sufficient to say that these provisions cannot be treated as having created separate taxing districts without holding that they impair the unity and power which the constitution secures to Clay county as a political subdivision of the state." *Id.*, 22 S.W. at 175.

We returned to litigation in Clay County in *Woolard v. Thomas*, 238 Ark. 162, 381 S.W.2d 453 (1964). There, we stated,

> The levying of a tax for the construction of a courthouse is a tax levy for county purposes. In *Williams, et al, v. Arkansas County Courthouse Improvement District, et al.*, 153 Ark. 469, 240 S.W. 725, we said:
>> "If the expense of holding the courts and otherwise maintaining two judicial districts in a county is a county expense, it would seem that it necessarily follows that the *erection of a courthouse for the use of such district would also be a county expense.*" [Emphasis added] It must be said that the construction or reconstruction of a district courthouse or jail is a matter of county-wide interest and responsibility and any tax levied for such a purpose is a tax levy for a county purpose.

*Woolard*, 238 Ark. at 165–66, 381 S.W.2d at 455 (emphasis in original). Thus, it is clear that, as a taxing entity, Mississippi County can levy a tax for the building of a courthouse in either judicial district because it is a county purpose. Again, I note that the Clay County act establishing two judicial districts contained the same language as section 20. In precluding Mississippi County from collecting the tax, the majority usurps its authority to impose a countywide tax to further a countywide purpose and instead accords that authority to a nontaxing authority, a judicial district.

Moreover, the majority misconstrues section 20. A common rule of statutory construction that this court has applied many times is that of *ejusdem generis*, which provides that when general words follow specific words in a statutory enumeration, the general words

are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *See, e.g.*, *Arms v. State*, 2015 Ark. 364, at 8, 471 S.W.3d 637, 642. Here, section 20 first lists specific words, "revenue accruing to the county from the sale of forfeited state and county lands, liquor and ferry license," in other words, fees that might be collected by the county clerk at a courthouse in a judicial district. In applying the rule of *ejusdem generis*, it is fair to argue that the general words that follow the specific words, "from all other sources whatever," might also include fees collected at each courthouse for marriage licenses, filing civil cases, and recording instruments of record. Yet, the majority concludes that a county sales-and-use tax also falls within these general words. I submit that this inclusion stretches far beyond what any reasonable construction of those words might entail. *See Agape Church, Inc. v. Pulaski Cty.*, 307 Ark. 420, 425, 821 S.W.2d 21, 23 (1991) ("A reasonable interpretation of the class of exempt property is one that embraces buildings related to church purposes and land where they are located The class defined by the specific references, therefore, is composed of church buildings, church-related buildings, and the land on which such buildings are located. As we cannot conclude that a television tower is a building, it does not come within the class."). This case serves as a blow to the Mississippi County Quorum Court and to the residents of that county in their efforts to govern themselves.

I respectfully dissent.

*Steel, Wright, Gray & Hutchinson, PLLC*, by: *Alex T. Gray*, *Nate Steel*, and *Jeremy Hutchinson*, for appellants.

*McDaniel, Richardson & Calhoun, PLLC*, by: *Bart W. Calhoun*, for appellees.

Cite as 2017 Ark. 71